## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE ARBITRATION BETWEEN:<br><br>**J.B. HUNT TRANSPORT, INC.,**<br>**615 J.B. Hunt Corporate Drive**<br>**Lowell, AR 72745**<br><br>Claimant/Respondent,<br><br>v.<br><br>**BNSF RAILWAY COMPANY,**<br>**2500 Lou Menk Drive**<br>**Fort Worth, TX 76131**<br><br>Respondent/Claimant. | Case: 1:18-mc-00016<br>Assigned To : Jackson, Amy Berman<br>Assign. Date : 1/30/2018<br>Description: Misc.<br><br>Misc. Case No. _____<br>[AAA Case # 01-17-0000-0130] |

### J.B. HUNT TRANSPORT, INC.'S
### MOTION TO COMPEL COMPLIANCE WITH A DISCOVERY ORDER ISSUED BY
### AN ARBITRATION PANEL AND FOR EXPEDITED CONSIDERATION

J.B. Hunt Transport, Inc. ("Hunt") moves under 9 U.S.C. § 7 of the Federal Arbitration Act ("FAA") for an order compelling compliance with a discovery order directed to BNSF Railway Company ("BNSF") by the arbitration panel in the above-captioned arbitration matter (the "Arbitration") and, in support, states:

#### Jurisdiction and Venue

1.     Hunt is a wholly owned subsidiary of J.B. Hunt Transport Services, Inc., one of the largest transportation, delivery, and logistics companies in North America. Hunt is a corporation organized under the laws of the State of Georgia with its principal place of business in Arkansas.

2.     BNSF is a corporation organized under the laws of the State of Delaware with its principal place of business in Fort Worth, Texas. BNSF is a wholly owned subsidiary of

Burlington Northern Santa Fe, LLC, and is the successor to Burlington Northern Santa Fe Corporation. Burlington Northern Santa Fe, LLC is a wholly owned subsidiary of Berkshire Hathaway. BNSF operates the second-largest railroad network in North America.

3. The amount in dispute in the Arbitration exceeds $75,000, exclusive of interest and costs.

4. Because there is complete diversity of citizenship between the parties and more than $75,000 at stake, this Court has jurisdiction under 28 U.S.C. § 1332(a)(1).

5. The Arbitration is being conducted in, and the Arbitration panel is sitting in, the District of Columbia. Accordingly, venue is proper in this District under 9 U.S.C. § 7.

### Facts Regarding the Issuance of the Discovery Order

6. On January 3, 2017, Hunt initiated the Arbitration against BNSF with the American Arbitration Association. The Arbitration addresses disputes between the parties under a Joint Services Agreement ("JSA"), a confidential agreement entered into by the parties in 1996.

7. Under the JSA, BNSF and Hunt jointly transport intermodal traffic across the United States. Intermodal traffic is traffic that is transported by more than one mode of transportation from origin to destination. For example, goods that are transported by both rail and truck before reaching their destination are intermodal traffic.

8. The parties are conducting discovery in the Arbitration. As part of that discovery, Hunt requested that BNSF produce its contracts with certain intermodal customers. BNSF initially responded to Hunt's request by stating that it would produce documents once it had obtained any required third-party consent.

9. In July 2017, Hunt and BNSF reached an agreement on the scope of third-party contract materials that each would produce as a sample. As part of that agreement, BNSF agreed

to produce certain of its contracts (or contract excerpts) with third parties subject to "providing any necessary notice and/or obtaining any necessary third-party consent."

10.     BNSF subsequently advised Hunt that some third parties declined to consent to the production of their contracts with BNSF.  In those instances, BNSF withheld production.

11.     Hunt then filed a motion to compel with the Arbitration panel, seeking an order "compelling BNSF to produce the third-party transportation contracts and contract excerpts identified through the parties' July 2017 contract production agreement" but "currently withheld by BNSF on grounds of third-party confidentiality objections."

12.     In the motion, Hunt argued that "[p]roduction of BNSF's third-party contracts, as sought in Hunt's Requests, is appropriate.  BNSF has not disputed Hunt's need for this information and BNSF has sought similar third-party contracts from Hunt. . . ."

13.     Hunt also asserted that the "three-tiered protective order in [the Arbitration] provides adequate protection from unwarranted use or disclosure of the contracts.  BNSF will have the ability to designate any third-party contracts or third-party contract excerpts as Outside Counsel Only information."  *See* Arbitration Protective Order, attached hereto as Exb. 1.  Under the Arbitration Protective Order, the third-party contract and third-party contract excerpts can be designated as "outside counsel only" by BNSF, which means that only outside counsel and consultants retained by Hunt—and no Hunt personnel—will have access to the information.

14.     BNSF did not contest the motion to compel, authorizing Hunt to represent to the Arbitration panel that BNSF neither joined in nor objected to the motion to compel.

15.     In October 2017, the Arbitration Panel granted Hunt's motion to compel (the "Discovery Order").  *See* Discovery Order, attached hereto as Exb. 2.  The Arbitration panel held

that Hunt had shown "good cause" why the motion should be granted and that BNSF did not oppose the motion.

16.    To date, BNSF has not complied with the Discovery Order.  BNSF is withholding from production BNSF's third-party contracts and third-party contract excerpts involving six separate entities.  These documents are in the custody and control of BNSF, but BNSF refuses to produce them without a court order.

17.    Hunt now petitions this Court under 9 U.S.C. § 7 of the FAA for an order compelling compliance with the Discovery Order.

**Legal Authority**

18.    The FAA "unambiguously authorizes an arbitrator to summon any [] party witnesses before an arbitration panel, or before any member of the panel, to give testimony and provide material evidence." *Alliance Healthcare Servs., Inc. v. Argonaut Private Equity, LLC*, 804 F. Supp. 2d 808, 811 (N.D. Ill. 2011) (emphasis omitted).

19.    The recognized method for enforcing an arbitration discovery "summons" is to "petition a court to compel production."  Paul D. Friedland & Lucy Martinez, *Arbitral Subpoenas Under U.S. Law & Practice*, 14 AM. REV. INT'L ARB. 197, 225 (2003); *see also Comsat Corp. v. National Science Found.*, 190 F.3d 269, 276 (4th Cir. 1999) (holding that the FAA's "only mechanism for obtaining federal court review is the petition to compel").  The FAA provides that a party may "petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting" to compel compliance with an arbitration discovery summons.  9 U.S.C. § 7.

20.    Federal courts applying 9 U.S.C. § 7 consider the statutory reference to a "summons" to encompass both arbitration discovery orders and subpoenas.  *See Lumbermans Mut.*

*Casualty Co. v. Broadspire Mgmt. Servs., Inc.*, No. 07 C 0386, 2008 WL 1774565 (N.D. Ill. Apr. 15, 2008) (treating an arbitrator's discovery order as a "summons" under 9 U.S.C. § 7); *Unison Co., Ltd. v. Juhl Energy Dev., Inc.*, No. 13-cv-3342, 2016 WL 4942034, at *2 (D. Minn. Mar. 21, 2016) (same); *Amgen Inc. v. Kidney Ctr. of Del. County, Ltd.*, 879 F. Supp. 878, 880 n.1 (N.D. Ill. 1995) ("It appears for purposes of applying the FAA that the term 'summons' is used to refer to what should be referred to as a 'subpoena' under the Federal Rules of Civil Procedure."); Friedland, 14 AM. REV. INT'L ARB. at 198 ("[A]rbitrators in practice often issue orders with the same purpose and effect as subpoenas. Research has revealed no case which ascribes any significance to the use by an arbitrator of an order instead of a subpoena.").

21.     As noted above, venue is proper under 9 U.S.C. § 7 because the Arbitration panel is sitting in the District of Columbia. *See Alliance Healthcare*, 804 F. Supp. 2d at 811-12. ("Because the arbitration proceeding is being conducted in Chicago, only a court in this district may enforce a subpoena issued by the arbitrators."); *Comsat Corp. v. National Science Found.*, 190 F.3d 269, 274 (4th Cir. 1999) ("The situs of the pending arbitration is Reston, Virginia; therefore the district court for the Eastern District of Virginia properly assumed jurisdiction pursuant to § 7 of the FAA.").

22.     "Under FAA section 7, a federal court's authority to enforce an arbitrator's subpoena is coextensive with the court's authority to enforce one of its own subpoenas." *Alliance Healthcare*, 804 F. Supp. 2d at 811. "Service and enforcement of subpoenas in federal court is governed by Federal Rule of Civil Procedure 45." *Id.* Rule 45 provides that a "subpoena may be served at any place within the United States" and that a subpoena may command the "production of documents" "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P 45(b)(2) & (c)(2)(A).

23.     Therefore, this Court may enforce the Discovery Order and command that BNSF produce the documents at issue within 100 miles of Fort Worth, Texas.

24.     As noted, BNSF did not object to the motion to compel.  Even if BNSF had objected, however, this Court should not second-guess the propriety of the Arbitration panel's decision to grant Hunt's motion to compel.  The "relevance of the information and the appropriateness of the subpoena [or discovery order] should be determined in the first instance by the arbitrator." *American Fed'n of Television & Radio Artists, AFL-CIO v. WJBK-TV*, 164 F.3d 1004, 1010 (6th Cir. 1999); *see also In re Security Life Ins. Co. of Am.*, 228 F.3d 865, 871 (8th Cir. 2000) (same); *Festus & Helen Stacy Found., Inc. v. Merrill Lynch, Pierce Fenner, & Smith Inc.*, 432 F. Supp. 2d 1375, 1379 (N.D. Ga. 2006) (holding that "any relevance and materiality concerns should be directed to the" arbitrator).

25.     Moreover, this Court should reject any third party's objection to compelling BNSF to comply with the Discovery Order.  The Arbitration Protective Order provides for an outside-counsel-only level of confidentiality that provides adequate protection to any third party's interest. *See* Exb. 1.

26.     For all these reasons, this Court should compel BNSF to comply with the Arbitration panel's Discovery Order and to produce the documents at issue within 100 miles of BNSF's offices in Fort Worth, Texas, or any other location agreed to by the parties.

### Request For Expedited Consideration

27.     In view of the schedule in the Arbitration proceeding, Hunt respectfully requests that this Court consider this motion on an expedited basis.

WHEREFORE, J.B. Hunt Transport, Inc. prays that this Court enter an order compelling BNSF Railway Company to comply with the Arbitration panel's Discovery Order and for all other proper relief.

Respectfully submitted,

By:    /s/ Frank J. Pergolizzi
        Frank J. Pergolizzi [D.C. Bar #405174]
        Daniel M. Jaffe [D.C. Bar #461185]
        SLOVER & LOFTUS LLP
        1224 Seventeenth St., N.W.
        Washington, D.C.  20036
        202.347.7170
        fjp@sloverandloftus.com
        dmj@sloverandloftus.com

        *Attorneys for J.B. Hunt Transport, Inc.*

DATED:  January 30, 2018